**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-02364-NYW

TERESA BYRON-AMEN,

     Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

     Defendant.

---

## ORDER ON MOTION TO COMPEL

---

Magistrate Judge Nina Y. Wang

     This matter is before the court on Plaintiff's Motion to Compel (the "Motion" or "Motion to Compel"). [Doc. 32]. The court fully presides over this matter pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes dated October 13, 2021. [Doc. 15]. Upon review of the Motion, the related briefing, and the applicable case law, the Motion to Compel is respectfully **DENIED**.

## BACKGROUND

     This case arises out of an automobile collision occurring on or about November 23, 2019. [Doc. 5 at ¶¶ 4, 6]. On that date, Plaintiff Teresa Byron-Amen ("Plaintiff" or "Ms. Byron-Amen") was traveling on a Denver, Colorado highway when her vehicle was struck by an underinsured motorist. [*Id.*]. Plaintiff alleges that the collision was caused by the underinsured motorist's negligent driving. [*Id.* at ¶ 13]. Ms. Byron-Amen suffered damages as a result of the collision. [*Id.* at ¶¶ 9, 43].

     At the time of the collision, Ms. Byron-Amen held two insurance policies (collectively, the "Policy") issued by State Farm Mutual Automobile Insurance Company ("Defendant" or "State

Farm"), which provided underinsured motorist ("UIM") coverage to Plaintiff. [*Id.* at ¶ 14]. On February 2, 2021, State Farm authorized Ms. Byron-Amen to enter into a settlement with the underinsured motorist's insurance carrier for an amount equal to the underinsured motorist's policy limits. [*Id.* at ¶ 16].

Because her medical expenses exceeded the amount of Plaintiff's settlement, *see* [*id.* at ¶¶ 17, 43-44], Ms. Byron-Amen submitted a claim to State Farm seeking UIM benefits for the injuries she sustained in the November 23, 2019 collision. [*Id.* at ¶¶ 19-20]. In so doing, Plaintiff submitted numerous documents and medical bills to State Farm and provided State Farm an authorization to obtain her medical records related to her prior medical treatment. [*Id.* at ¶¶ 22-23, 25, 28]. On June 15, 2021, State Farm sent correspondence to Ms. Byron-Amen indicating that it was "gathering prior records for [Plaintiff] and [would] be scheduling an [independent medical examination ('IME')]" of Plaintiff. [*Id.* at ¶ 27]. State Farm informed Plaintiff that further evaluation of her claim "pends the results of the IME." [*Id.*]. In other words, State Farm informed Plaintiff that it was unable to evaluate her UIM claim absent an IME of Plaintiff. *See* [*id.* at ¶ 32]. It is Plaintiff's position that "State Farm has all the information necessary to evaluate" Plaintiff's claim and there is no right under the Policy for State Farm to demand that Plaintiff participate in an IME. [*Id.* at ¶¶ 29, 33].

Ms. Byron-Amen initiated this civil action against State Farm on August 6, 2021 in the District Court for Denver County, Colorado, [*id.* at 1], and State Farm removed this action to federal court on September 1, 2021. [Doc. 1]. In her Complaint, Ms. Byron-Amen raises one claim of breach of contract and one claim of unreasonable delay or denial of insurance benefits pursuant to Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116. [Doc. 5 at 6, 7]. Plaintiff's second claim also appears to invoke the doctrine of unjust enrichment. *See* [*id.* at 7]. This court entered

its Scheduling Order on October 28, 2021, *see* [Doc. 17], and State Farm filed an Amended Answer on November 4, 2021.  [Doc. 19].[1]

On November 12, 2021, Plaintiff filed a Motion for Protective Order Regarding Conditions & Framework of Proposed Physical Examination of Plaintiff (the "Motion for Protective Order"). [Doc. 21].  In that filing, Plaintiff sought a protective order limiting State Farm to one medical examination in this case pursuant to Rule 35 of the Federal Rules of Civil Procedure and requiring that State Farm's IME of Plaintiff be videotaped at Plaintiff's expense.  [*Id.* at 3, 5].  This court denied Plaintiff's Motion for Protective Order on January 25, 2022, finding that "whether the agreed-upon medical examination of Ms. Byron-Amen is considered a medical examination under the Policy or an IME under Rule 35 is of no consequence" to this action.  [Doc. 28 at 7-8].  In addition, the court concluded that Ms. Byron-Amen had not met her burden of demonstrating that videotaping her IME was necessary in this instance.  [*Id.* at 14].

Thereafter, the Parties contacted the court and requested a Discovery Dispute Conference, which was held on March 8, 2022.  *See* [Doc. 30].  At that Conference, the Parties discussed a discovery dispute regarding State Farm's assertion of work-product privilege over its claims handling notes created after Plaintiff initiated this lawsuit. [*Id.*].  After hearing argument from the Parties, this court ordered Defendant to supplement its privilege log no later than March 14, 2022, and instructed the Parties that if, after Defendant's supplementation, the Parties' dispute remained unresolved, the Parties would be required to formally brief the issue by filing an appropriate motion

---

[1] State Farm filed its original Answer on September 29, 2021.  [Doc. 13].  At the Scheduling Conference, the Parties informed the court that they had a dispute concerning the sufficiency of some of Defendant's responses in that Answer.  [Doc. 18 at 2].  Upon review of the original Answer, this court concluded that Defendant's response to Paragraph 26 of the Complaint did not adequately respond to the Paragraph's substance and ordered Defendant to file an Amended Answer which amended its response to Paragraph 26.  [*Id.* at 3].

under the Federal Rules.  [*Id.* at 1]; *see also* NYW Civ. Practice Standard 37.1 (explaining that the court will likely not resolve issues of privilege during a Discovery Dispute Conference and that parties should expect to engage in formal motions practice to resolve such issues).

Ms. Byron-Amen filed the instant Motion to Compel on March 24, 2022. [Doc. 32].  She states that after Defendant supplemented its privilege log, *see* [Doc. 32-1 (the "Second Supplemental Privilege Log")], the Parties are still unable to resolve their dispute concerning Defendant's claim of work-product privilege over the post-litigation claim notes.  [Doc. 32 at 1]. Ms. Byron-Amen does not specifically request a court order compelling the production of any documents, but instead requests that the court conduct an *in camera* review of State Farm's post-suit claim notes to "determine the applicability of any privilege." [*Id.* at 5].  State Farm responded in opposition to the Motion on April 5, 2022, asserting that "[c]ompelling State Farm to disclose its post-suit claim notes and materials . . . would be contrary to Colorado law" and "unfair and prejudicial to State Farm." [Doc. 37 at 3].  State Farm argues that the post-litigation claims notes are not relevant to Plaintiff's claims, [*id.* at 5], but even if they were, the notes are protected from disclosure by the work-product doctrine.  [*Id.* at 12-13].   Plaintiff did not file a reply.[2]  Because this matter is ripe for disposition, I consider the Parties' arguments below.

## LEGAL STANDARDS

### I.     Rule 26(b)(1)

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible discovery in this action.  Fed. R. Civ. P. 26(b)(1).  The Rule permits discovery regarding any nonprivileged matter that is both relevant to any party's claim or defense and proportional to the

---

[2] On March 13, 2022, Defendant filed a Notice of Supplemental Authority, *see* [Doc. 39], and Plaintiff similarly filed a Notice of Supplemental Authority on May 16, 2022. *See* [Doc. 40].

needs of the case. *Id.*  Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401.  Relevance is broadly construed and a request for discovery should be permitted if there is "any possibility" that the information sought may be relevant to any party's claim or defense. *Martensen v. Koch*, 301 F.R.D. 562, 570 (D. Colo. 2014).  The Advisory Committee Notes to Rule 26(b) instruct that in determining the relevance of requested discovery, "the parties and the court [should] focus on the actual claims and defenses involved in the action." *See* Fed. R. Civ. P. 26(b) advisory committee's note to 2000 amendment.

"When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004).  However, when the relevance of a discovery request is not apparent on the face of the request itself, the proponent of the discovery bears the burden of showing the relevance of the request. *Cunningham v. Standard Fire Ins. Co.*, No. 07-cv-02538-REB-KLM, 2008 WL 2668301, at *1 (D. Colo. July 1, 2008).

## II.   Compelling Discovery or Ordering *In Camera* Review

Pursuant to Rule 37(a)(1), a party may move for a court order compelling discovery, including disclosures required under Rule 26(a).  *See* Fed. R. Civ. P. 37(a)(3)(A).  "The administration of the rule[] lies necessarily within the province of the trial court with power to fashion such orders [as] may be deemed proper to vouchsafe full discovery for the just, speedy and

inexpensive determination of the lawsuit." *Robison v. Transamerica Ins. Co.*, 368 F.2d 37, 39 (10th Cir. 1966).

In addition, where a party asserts that certain documents are protected from disclosure on the basis of privilege, a court may order an *in camera* review of the documents to resolve the privilege issue. *FDIC v. United Pacific Ins. Co.*, 152 F.3d 1266, 1276 n.6 (10th Cir. 1998). Before ordering an *in camera* review, "there must first be [a] sufficient evidentiary showing which creates a legitimate issue as to the application of the privilege asserted," and "[a] broad, sweeping assertion that all documents alleged to be privileged should be reviewed in camera is insufficient to justify the review." *Ressler v. United States*, No. 10-cv-03050-REB-BNB, 2012 WL 3231002, at *2 (D. Colo. Aug. 6, 2012) (quotation omitted). Rather, the party requesting an *in camera* review must "identify each specific document at issue and provide arguments about each document to persuade the court" that review is necessary. *Id.* (quoting *Calder v. Blitz U.S.A., Inc.*, No. 2:07-cv-387-TC-PMW, 2010 WL 924261 at *1 (D. Utah Mar. 11, 2010)). The decision to review documents *in camera* is within the discretion of the trial court. *Cantu Servs., Inc. v. Worley*, No. CIV-12-129-R, 2021 WL 2323721, at *5 (W.D. Okla. June 7, 2021).

## ANALYSIS

Ms. Byron-Amen moves this court to conduct an *in camera* review of State Farm's "claims file/notes from August[] 2021 until the present" on the basis that she is unable to ascertain from the Second Supplemental Privilege Log whether the redactions to and omissions of these documents from State Farm's disclosures are appropriate. [Doc. 32 at 5]. State Farm opposes Plaintiff's Motion, raising two arguments: (1) its claims handling notes created after Plaintiff initiated this lawsuit are not relevant to the determination of Plaintiff's claims, [Doc. 37 at 5-12],

and (2) even if the notes are relevant to this case, they are nevertheless protected by the work-product doctrine.  [*Id.* at 12-17].

## I.    Relevance

As set forth above, information must be relevant to be discoverable.  Fed. R. Civ. P. 26(b)(1).  State Farm's first argument in opposition to Plaintiff's Motion to Compel is an assertion that the requested documents from Defendant's Rule 26(a) disclosures are not relevant to Plaintiff's claims for breach of contract or unreasonable delay or denial.  [Doc. 37 at 3].  Because Plaintiff did not file a reply, she did not respond to this argument; however, in her Motion to Compel, she asserts that "[c]laims handling, whether pre[-] or post-litigation, is relevant to this lawsuit where State Farm has continued (hopefully) to evaluate Ms. Byron-Amen's claim."  [Doc. 32 at 2].  In support of her assertion, Ms. Byron-Amen cites a number of Colorado cases discussing the relevancy of certain documents to insurance-dispute claims.  *See* [*id.* at 2-3].

In response, State Farm argues that the requested documents are not relevant to either of Plaintiff's claims in this matter and, for this reason, Plaintiff's discovery requests amount to "a fishing expedition into State Farm's post-suit claim notes and materials based on vague and non-specific recitations of general bad faith principles and bad faith conduct."  [Doc. 37 at 6, 8-9].  State Farm's argument primarily distinguishes this case from the authority cited by Plaintiff and other cases arising out of Colorado state courts and courts within this District.  *See, e.g.*, [*id.* at 6-10].  For example, State Farm asserts that while some Colorado cases have suggested that an insurer's post-litigation conduct might be relevant to an insurance case wherein a plaintiff has raised a *common law* bad faith claim, these cases are inapplicable in the instant matter, where Plaintiff has raised only a general breach of contract claim and unreasonable delay or denial claim.

[*Id.* at 6].  State Farm, however, does not cite any authority clearly establishing that the requested materials are *not* relevant to this action.  *See generally* [*id.*].

Based on the Parties' arguments, the court finds it helpful to first set out the applicable law in Colorado with respect to both insurance disputes and the discoverability of certain documents in insurance-dispute cases.  Then, the court analyzes whether State Farm's post-litigation claims notes are relevant to either Plaintiff's breach-of-contract claim or statutory unreasonable-delay-or-denial claim.

### A.    Applicable Law

Insurance disputes that eventually precipitate formal litigation tend to give rise to three types of claims under Colorado law: breach of contract, common law bad faith breach of an insurance contract, and unreasonable delay or denial of insurance benefits under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116.  Under Colorado law, a general breach of contract claim consists of the following elements: "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff."  *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (citations omitted).  In addition, when a breach of contract claim is brought pursuant to an insurance policy, the insured must establish coverage under the policy.  *Jenkins v. State Farm Fire & Cas. Co.*, No. 15-cv-02691-CMA-NYW, 2017 WL 11544767, at *2 (D. Colo. May 31, 2017).

The other two claims—common law bad faith breach of an insurance contract and statutory unreasonable delay or denial of insurance benefits—are specific to disputes arising out of an insurance policy and the insurer-insured relationship.  These claims are similar, but meaningfully distinct.  A statutory claim arises under § 10-3-1115 when an insurer delays or denies payment of an insurance benefit "without a reasonable basis for that action."  Colo. Rev. Stat. § 10-3-1115(2);

*see also State Farm Mut. Auto. Ins. Co. v. Fisher*, 418 P.3d 501, 506 (Colo. 2008) (section 10-31115 imposes a duty on insurers to not "unreasonably delay or deny paying a covered benefit without a reasonable basis for doing so.").  Thus, to state a claim of unreasonable delay or denial under § 10-3-1115, an insured must allege that: (1) the insurer delayed or denied payment of benefits to the insured, and (2) the delay or denial was without a reasonable basis. *Am. Fam. Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185-86 (Colo. 2018).

Meanwhile, a common law claim for bad faith breach of an insurance contract arises out of an insurer's duty of good faith and fair dealing: "[d]ue to the 'special nature of the insurance contract and the relationship which exists between the insurer and the insured,' an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort." *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414 (Colo. 2004) (quoting *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003)).  A common law bad faith claim is similar to an unreasonable-delay-or-denial claim in that both claims require a showing of unreasonable conduct on the part of the insurer. *McKinney v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-01651-CMA-KLM, 2021 WL 4472921, at *4 (D. Colo. Sept. 30, 2021).  However, the requirements of a common law bad faith claim are "heightened in comparison" to those of an unreasonable-delay-or-denial claim. *Butman Fam. Inv. Ltd. P'ship v. Owners Ins. Co.*, No. 19-cv-01638-KLM, 2020 WL 1470801, at *8 (D. Colo. Mar. 25, 2020).  In addition to showing that the insurer delayed or denial the payment of benefits without a reasonable basis, "a common law insurance bad faith claim requires the insured to sufficiently allege . . . that the insurer knowingly or recklessly disregarded the validity of the insured's claim." *Id.* (quoting *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 990 (Colo. App. 2015)).  In other words, a common law bad faith claim requires a showing that the insurer <u>subjectively</u> knew of, or recklessly disregarded, the unreasonableness

of its conduct. *Bruce v. Pac. Specialty Ins. Co.*, No. 15-cv-01323-RM-CBS, 2016 WL 11693598, at *10 (D. Colo. Aug. 15, 2016), *report and recommendation adopted*, 2017 WL 11545237 (D. Colo. Feb. 8, 2017), *aff'd*, 755 F. App'x 731 (10th Cir. 2018); *see also Zolman v. Pinnacol Assur.*, 261 P.3d 490, 497 (Colo. App. 2011) (stating that an insurer "will be found to have acted in bad faith only if it has <u>intentionally</u> denied, failed to process, or failed to pay a claim without a reasonable basis.") (emphasis added).

Here, Plaintiff asserts a general breach of contract claim and an unreasonable-delay-or-denial claim under § 10-3-1115, but she does *not* assert a common law claim for bad faith breach of an insurance contract. *See generally* [Doc. 5 at 6-7].[3]  Accordingly, the question before the court is whether State Farm's post-litigation claims notes are relevant to either of Plaintiff's presented claims.

### B.    The Relevance of Defendant's Claim Notes to Plaintiff's Claims

The relevance of State Farm's claims handling notes created after Plaintiff initiated the instant action is not plainly apparent to the court because neither of her asserted claims turn on Defendant's subjective knowledge, and for this reason, Ms. Byron-Amen bears the burden of demonstrating the relevance of the requested documents. *Cunningham*, 2008 WL 2668301, at *1. Ms. Byron-Amen asserts that State Farm's post-suit claims handling notes are relevant to her

---

[3] In the context of her statutory claim, Plaintiff does allege that Defendant "acted unreasonably" and "knew that its conduct was unreasonable and/or recklessly disregarded the fact that its conduct was unreasonable." [Doc. 5 at ¶ 59].  But Plaintiff's Complaint makes clear that her bad faith claim arises under § 10-3-1115, rather than common law, [*id.* at 7], and Plaintiff does not mention bad faith or expressly raise a common law bad faith claim in her Complaint. *See generally* [*id.*]. Plaintiff, who is represented by counsel, is not entitled to a liberal construction of her pleadings. *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994).  Accordingly, the court does not construe the Complaint as asserting a common law bad faith claim. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (to satisfy Rule 8, the plaintiff must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests") (quotation omitted).

claims because without such materials, she is "unable to assess that State Farm is continuing to evaluate her claim" or is "continuing to intentionally delay or deny Plaintiff's claim in violation of" Colo. Rev. Stat. § 10-3-1115.  [Doc. 32 at 3-4].  Throughout her Motion to Compel, Ms. Byron-Amen suggests that the relevance of the documents stems from the insurer's continuing duty to deal with its insured in good faith, which spans beyond the initiation of formal litigation.  *See, e.g.*, [*id.* at 2-3].  Plaintiff does not cite to any cases, however, directly standing for the proposition that the claims handling notes are relevant to her claims for breach of contract or statutory unreasonable delay or denial.  *See generally* [*id.*].  For the reasons that follow, the court is respectfully unpersuaded by Plaintiff's arguments.

The court does not disagree with Plaintiff's general suggestion that in certain contexts, Colorado courts have concluded that an insurer's conduct occurring after the initiation of an adversarial proceeding may be relevant in certain insurance-dispute cases.  For example, in *Southerland v. Argonaut Insurance Co.*, the Colorado Court of Appeals affirmed the trial court's decision to admit "evidence [of] several instances of bad faith conduct" by the insurer "which occurred after the filing of the complaint."  794 P.2d 1102, 1106 (Colo. App. 1990).  The court reasoned that the evidence reflected "a continuation of the same difficulties that preceded the filing of the complaint" and was relevant as evidence of the defendant's pattern of bad faith in its dealings with the plaintiff.  *Id.*  Years later, the Colorado Supreme Court stated that because common law bad faith claims "may encompass all of the dealings between the parties, including conduct occurring after [an] arbitration procedure,"[4] *Dale v. Guaranty Nat'l Ins. Co.*, 948 P.2d 545, 552 (Colo. 1997), "evidence of a consistent pattern of delaying payments," including evidence of

---

[4] At the time *Dale* was decided, Colorado law mandated arbitration of breach of insurance contract claims.  *See Dale*, 948 P.2d at 548-49.  The statute establishing this requirement has since been repealed.  *See Brody v. State Farm Mut. Auto. Ins. Co.*, 194 P.3d 459, 459 (Colo. App. 2008).

conduct occurring after the initiation of formal legal proceedings, "is relevant for an insurance bad faith claim and would tend to prove bad faith on the part of the insurance company." *Id.* at 553 n.10.

Courts in this District have similarly concluded that an insurer's post-litigation conduct may be relevant to an insured's common law bad faith claim. For example, one court in this District declined to exclude evidence of the post-litigation conduct of an insurance company's in-house counsel, insofar as that counsel acted in a claims-adjuster capacity, because the insurer's common law duty of good faith and fair dealing continued after the filing of the complaint and was thus "relevant to [the plaintiff's] bad faith claim." *Fiechtner v. Am. Fam. Mut. Ins. Co.*, No. 09-cv-02681-WJM-MEH, 2011 WL 4087296, at *2 (D. Colo. Sept. 13, 2011). Similarly, another court in this District concluded that the conduct of an insurer during litigation may be admissible to establish "a pattern or course of conduct allegedly demonstrating bad faith." *Crest Exteriors, LLC v. Am. Fam. Mut. Ins. Co.*, No. 19-cv-02065-REB-SKC, 2020 WL 8181823, at *3 (D. Colo. Oct. 27, 2020).

These decisions are notably premised on an insurer's duty of good faith in dealing with its insured and, accordingly, hold that post-litigation conduct may be relevant to a common law bad faith claim. *See, e.g.*, *Dale*, 948 P.2d at 551 ("[T]he tort of bad faith breach of an insurance contract encompasses an entire course of conduct and is cumulative. . . . "[C]laims of insurance bad faith may encompass all of the dealings between the parties."); *Fiechtner*, 2011 WL 4087296, at *2 (relying on *Dale* in decision to not exclude evidence); *Crest Exteriors*, 2020 WL 8181823, at *2-3; *see also Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 970 (Colo. App. 2011) ("[B]ecause bad faith breach of insurance contract encompasses an entire course of conduct, an

insurer's ongoing bad faith conduct is relevant to a <u>common law</u> bad faith claim.") (emphasis added) (quotation omitted).

But here, Ms. Byron-Amen does not raise a common law bad faith claim.  She raises only a statutory claim of unreasonable delay or denial and a general breach of contract claim.  *See* [Doc. 5 at 6-7].  Accordingly, while these cases may provide insight into Colorado courts' approach to determining the scope of relevant evidence in insurance cases generally, the court respectfully cannot conclude that they guide the court's analysis here.  Accordingly, the court turns its analysis to whether the requested documents are relevant to the specific claims raised by Plaintiff in this case.  *See* Fed. R. Civ. P. 26(b) advisory committee's note to 2000 amendment.

***Statutory Unreasonable Delay or Denial***.  Plaintiff does not allege that State Farm has denied her insurance claim, *see generally* [Doc. 5], and thus, her statutory cause of action is necessarily based on the alleged unreasonable delay of payment on her claim.  *See, e.g.*, [*id.* at ¶¶ 27, 29, 32, 36, 55-56 (Plaintiff alleging that State Farm has delayed evaluating her claim until she undergoes an IME, which Plaintiff asserts is not required under the Policy)]; *see also Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 846 (Colo. 2018) (demonstrating that where the plaintiff does not allege the insurer has denied payment, the claim under § 10-3-1115 is for unreasonable delay of payment).  In her Motion to Compel, Ms. Byron-Amen argues that the claims handling notes are relevant to her claims because "an insurer's duties to an insured persist throughout the life of the insurer/insured relationship[,] even during litigation."  [Doc. 32 at 2].  She further cites authority for the proposition that the "<u>tort</u> of bad faith breach of [an] insurance contract encompasses all of the dealings between the parties." [*Id.* at 3 (quoting *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo. App. 2008) (emphasis added))].

The court is respectfully unpersuaded by Plaintiff's argument and her reliance on common law bad faith cases.  Notably, a claim for unreasonable delay or denial under § 10-3-1115 "does not require a showing of bad faith."  *Cope v. Auto-Owners Ins. Co.*, 437 F. Supp. 3d 890, 903 n.10 (D. Colo. 2020).  Indeed, "the only element at issue in the statutory claim [under § 10-3-1115] is whether an insurer denied benefits without a reasonable basis."  *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 760 (Colo. App. 2012).  Section 10-3-1115 "imposes a standard of liability on insurers different from that imposed by the common law," in that it expressly *eliminates* the requirement that an insurer knew of or recklessly disregarded its unreasonable conduct.  *Kisselman*, 292 P.3d at 973 (explaining that section 10-3-1115 creates a separate and distinct cause of action than a common law claim for bad faith).

The distinction between a common law bad faith claim and a claim under § 10-3-1115 is significant to this court's analysis.  The key inquiry on Plaintiff's statutory claim is whether State Farm's decision to delay payment of insurance benefits was without a reasonable basis.  The reasonableness of insurer's decision to delay payment "requires an assessment of whether the insurer's coverage decision was unreasonable *when it occurred*," *see Schultz*, 429 P.3d at 849 (quoting *Fireman's Fund Ins. Cos. v. Alaskan Pride P'ship*, 106 F.3d 1465, 1470 (9th Cir. 1997) (emphasis added)), and thus "must be evaluated based on the information that was before the insurer *at the time it made its coverage decision*."  *Id.* at 848-49 (emphasis added).[5]  Thus, whether State Farm's alleged delay of payment to Ms. Byron-Amen was unreasonable must be determined

---

[5] The *Schultz* court did not indicate whether its holding applied only to common law bad faith claims or to a claim arising under § 10-3-1115.  The court construes the *Schultz* rationale as applicable to both claims, as the basis for the court's decision—whether post-decision conduct was relevant to the reasonableness of the insurer's denial decision—encompasses the reasonableness element found in both types of claims.  *See Schultz*, 429 P.3d at 848-49.

from the information available to State Farm at the time it made its decision to delay payment on her claim until Ms. Byron-Amen underwent an IME. *See id.*

Plaintiff does not explain why State Farm's post-litigation (and post-decision) claims notes would be "pertinent to the question of what [the insurer] knew when it made its coverage decision in this case." *Id.* at 849; *see also generally* [Doc. 32]. Just as the Colorado Supreme Court held that an insurer cannot rely on later developments to "vindicate[] the Insurer's [coverage] decision," *Schultz*, 429 P.3d at 849, the court concludes that an insured may not rely on later developments to render an insurer's *prior* coverage decision objectively unreasonable.

Moreover, "[t]he reasonableness of the insurer's conduct must be determined objectively, based on proof of industry standards." *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 415 (Colo. 2004). In making this determination, the relevant inquiry before the factfinder is "whether a reasonable insurer under similar circumstances would have denied or delayed payment of the claim." *Thompson v. State Farm Mut. Auto. Ins. Co.*, 457 F. Supp. 998, 1003 (D. Colo. 2020). "To prove that an insurer acted unreasonably, an insured must come forward with evidence (typically from an expert) that the insurer's conduct violated industry standards." *Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co.*, 163 F. Supp. 3d 821, 836 (D. Colo. 2016). In other words, unlike a common law bad faith claim which requires a determination into the insurer's subjective state of mind, *see Bruce*, 2016 WL 11693598, at *10, the factfinder's inquiry on a statutory claim stops at objective reasonableness. Thus, while post-litigation conduct may be relevant to a claim of common law bad faith, *see Dale*, 948 P.2d at 553 n.10, particularly to establish the insurer's subjective state of mind, *see Herold v. Allstate Fire & Cas. Ins. Co.*, No. 20-cv-01959-WJM-STV, 2020 WL 13076987, at *4 (D. Colo. Dec. 8, 2020), *report and recommendation adopted*, 2020 WL 13076986 (D. Colo. Dec. 31, 2020) (an insurer's subjective

"intentions, understandings, agreements, or disputes" were "not irrelevant" to common law bad faith claim because they demonstrated the insurer's "subjective knowledge and understanding of Plaintiff's claims"), the court is not persuaded that the same is true for Plaintiff's statutory claim, which will be resolved based on evidence of industry standards. *Green Earth Wellness*, 163 F. Supp. 3d at 836. And absent any argument from Ms. Byron-Amen explaining why State Farm's post-litigation claim notes are relevant to the objective inquiry, *see* [Doc. 32], the court cannot conclude that she has met her burden of demonstrating the relevance of the requested information. *Cunningham*, 2008 WL 2668301, at *1.

Plaintiff's citation to *Silva v. Basin West, Inc.*, 47 P.3d 1184 (Colo. 2002), does not change this court's analysis. While Plaintiff suggests that *Silva* stands for the proposition that "documents that are inevitably associated with post-litigation conduct 'could be relevant and reasonably calculated to lead to admissible evidence regarding whether the insurance company adjusted a claim in good faith or made a prompt investigation, assessment, or settlement of a claim,'" [Doc. 32 at 2-3 (quoting *Silva*, 47 P.3d at 1193)], the court does not read *Silva* so expansively. In that case, the Colorado Supreme Court suggested in *dicta* that in the context of a first-party insurance claim,[6] an insurer's *pre-litigation* "reserves and settlement authority"[7] could be relevant as to "whether the insurance company adjusted a claim in good faith or made a prompt investigation, assessment, or settlement of a claim." *Silva*, 47 P.3d at 1187, 1193. Ultimately, however, the court noted that the "scope of discovery has . . . been traditionally broader in first-party disputes

---

[6] *Silva* involved a third-party tort claim, i.e., a claim asserted by an injured plaintiff against an alleged tortfeasor, as opposed to a first-party insurance claim, or a claim asserted by an injured plaintiff against her own insurance company. *See* 47 P.3d at 1191-92.

[7] "The term 'reserve' or 'reserves' has a special meaning in the law of insurance" and refers to "funds insurance companies set aside to cover future expenses, losses, claims, or liabilities." *Silva*, 47 P.3d at 1188-89.

between an insured party and his or her insurer"—as opposed to third-party personal injury claims—and concluded that reserves and settlement authority "should be less subject to discovery" than in first-party bad faith actions.  *Id.* at 1193.

The Colorado Supreme Court later developed this jurisprudence in *Sunahara v. State Farm Mutual Automobile Insurance Co.*, 280 P.3d 649 (Colo. 2012).  In this case, the court held that the rationale in *Silva* applied where a party sought the "liability assessments and similar cursory fault evaluations used by an insurance company to develop reserves and settlement authority"—i.e., pre-suit documents—even in the context of a first-party claim seeking UIM benefits.  *Id.* at 657. The *Sunahara* court reasoned that a first-party UIM benefits claim[8] "places the insurance company in the 'unique role' of becoming almost adversarial to its own insured," at which point the "defendant insurance company will naturally attempt to minimize the plaintiff's damages . . . because doing so serves the company's financial interests."  *Id.*  Indeed, unlike "bad faith and declaratory judgment cases," a UIM benefits claim requires an insurance company to "essentially defend the tortfeasor's behavior."  *Id.* at 658.  Due to the unique adversarial nature of this type of first-party claim, the court held that the scope of discovery with respect to reserves and settlement authority was "similar to the scope of discovery in third-party actions, like *Silva*, because the relationship between the parties is similarly adversarial."  *Id.* at 657.

The court cannot conclude that *Silva* and *Sunahara* are applicable here.  First, the pre-suit documents at issue in *Silva* and *Sunahara* are distinguishable from the post-suit documents that Plaintiff presently requests.  Moreover, neither the *Silva* plaintiff nor the *Sunahara* plaintiff

---

[8] The *Sunahara* opinion does not expressly set forth the claim raised by the insured in that case. However, the *Sunahara* state court complaint demonstrates that the plaintiff raised only a claim seeking payment of UIM benefits under the insurance policy and did not assert a claim bad faith or unreasonable conduct on the part of the insurer.  *See* Attach 1.

asserted a claim under § 10-3-1115—indeed, *Silva* was decided *before* Colo. Rev. Stat. § 10-3-

1115 was codified in 2008.  *See Silva*, 47 P.3d at 1187 (emphasis added); *see also* Attach 1.  Nor

does the court find *Tait ex rel. Tait v. Hartford Underwriters Insurance Co.*, 49 P.3d 337, 343

(Colo. App. 2001)—which affirmed a trial court's decision to consider an insurance company's

*attorney's* litigation conduct in increasing an award of exemplary damages arising out of a breach

of the duty of good faith and fair dealing—applicable here.  *See* [Doc. 32 at 3 (Plaintiff citing *Tait*

for the proposition that "Colorado [c]ourts are clear that some post-litigation conduct by an

insurance company or its counsel might be relevant at trial.")].[9]

The court notes that another court in this District has ruled that post-litigation claims notes

may be relevant to a statutory unreasonable-delay-or-denial claim.  *See US Gen., LLC v. GuideOne

Mut. Ins. Co.*, No. 18-cv-01256-REB-NRN, 2022 WL 1301964, at *4 (D. Colo. Mar. 30, 2022)

("The tort of bad faith breach of insurance contract encompasses an entire course of conduct. . . .

---

[9] Similarly, the court is respectfully not persuaded by the cases cited in Plaintiff's Notice of Supplemental Authorities, which do not arise out of jurisdictions applying Colorado law.  *See* [Doc. 40 at 1].  As a preliminary matter, each of the cases primarily involves the applicability of the work-product doctrine to documents held by an insurance company.  *See Duett v. State Farm Mut. Auto. Ins. Co.*, No. 2:19-cv-01917-LK, 2022 WL 425342, at *3 (W.D. Wash. Feb. 11, 2022); *Atlanta Gas Light Co. v. Navigators Ins. Co.*, No. 1:20-cv-02441-JPH-TAB, 2022 WL 1156699, at *3 (S.D. Ind. Apr. 19, 2022); *Luxottica of Am. Inc. v. Allianz Glob. Risks US Ins. Co.*, No. 1:20-cv-698, 2022 WL 1204870, at *4 (S.D. Ohio Apr. 22, 2022).  Moreover, insofar as the courts in these cases did opine as to the relevance of the disputed documents, these cases are not analogous to the instant matter.  For example, although the *Duett* court opined that "there is no question that the discovery sought is relevant to Plaintiff's claims and State Farm's defenses in this UIM action," the *Duett* plaintiff sought to compel production of documents created *prior to* the initiation of the lawsuit.  *See* 2022 WL 425342, at *3.  Similarly, the court in *Atlanta Gas Light* opined that *pre*-litigation documents could demonstrate the insurer's *bad faith* in handling the insured's claim.  *See* 2022 WL 1156699, at *6.  And finally, in *Luxottica*, the court found that information concerning the insurer's reserves could be relevant to a determination of whether an insurer acted in bad faith, finding that it is "not difficult to imagine a scenario where a reserve figure *does* have a bearing on a bad-faith denial."  2022 WL 1204870, at *6.  However, there is no indication in *Luxottica* that the documents containing reserves information were created after the plaintiff filed its complaint.  *See generally id.*  Accordingly, these cases do not alter this court's analysis.

Analogously, a claim for unreasonable delay or denial of benefits also covers an entire course of conduct. . . . If an insurer acts unreasonably after a suit is filed, the insurer may be liable for unreasonable delay or denial of insurance benefits.").  While this court has the utmost respect for the judicial officers in this District, the court is not bound by their respective unpublished decisions.  *See Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 904 n.1 (10th Cir. 2015) (noting that unpublished district court opinions provide no precedential value, though they may be persuasive).  Moreover, the court is persuaded by Colorado authority explaining that the reasonableness of an insurer's action is determined at the time it made its coverage decision, *see Schultz*, 429 P.3d at 847, as well as Colorado authority distinguishing a claim under § 10-3-1115 from its common law counterpart, and emphasizes that State Farm's good faith or subjective state of mind is not at issue in the context of Plaintiff's statutory claim.  *Kisselman*, 292 P.3d at 973.  To the extent that Plaintiff already alleges that State Farm has unduly delayed and/or denied the payment of her claim prior to the initiation of the lawsuit, the continuation of such delay post-litigation does not render post-suit information relevant because, as discussed above, the reasonableness of insurer's decision to delay payment "requires an assessment of whether the insurer's coverage decision was unreasonable *when it occurred*."  *See Schultz*, 429 P.3d at 849 (emphasis added).  And to the extent that Plaintiff asserts that since the inception of this litigation, she has "undergone a significant spinal surgery and approximately 7,000 pages of medical records have been provided to State Farm, along with executed Medical Authorizations/Releases being provided to State Farm," [Doc. 32 at 4], thus triggering a different theory of undue delay and/or denial of benefits than what is articulated in her Complaint, [Doc. 5], she makes no such argument with any specificity.  *See generally* [Doc. 32].

Based on the record before it, this court concludes that Plaintiff has not directed the court to authority demonstrating the relevance of State Farm's post-litigation claims notes to her claim under § 10-3-1115 as they current exist, nor has she expressly articulated a specific theory triggered after the inception of the suit as to why post-litigation conduct would be relevant to her claim. As a result, the court concludes that Plaintiff has failed to carry her burden at the outset to persuade this court that the requested documents are relevant to her statutory undue delay or denial claim.

**_Breach of Contract_**.  The court reaches a similar conclusion with respect to Plaintiff's breach of contract claim.  Plaintiff does not specifically argue that the claims handling notes are relevant to her breach of contract claim.  *See* [Doc. 32].  In its response, Defendant asserts that the notes are not relevant to this claim because this claim "is simply a determination of the amount of damages Plaintiff is legally entitled to collect from the tortfeasor."  [Doc. 37 at 5-6].  The court agrees with Defendant.  To succeed on her breach of contract claim, Ms. Byron-Amen must show that she was entitled to UIM benefits under the Policy and that State Farm breached the Policy by failing to pay benefits owed.  *Jenkins*, 2017 WL 11544767, at *2.  Resolution of this claim will thus require determining "the existence of insurance," as well as the "type and amount of coverage" and "damage assessments."  *Robinson v. Charter Oak Fire Ins. Co.*, No. 20-cv-01534-PAB-MEH, 2021 WL 948824, at *2 (D. Colo. Mar. 11, 2021).  Plaintiff has not explained why State Farm's claims handling notes would be relevant to the questions of coverage or whether State Farm breached the Parties' insurance contract.  *See* [Doc. 32].  Moreover, in *Sunahara*, the Colorado Supreme Court concluded that pre-litigation documents establishing reserves and settlement authority are not relevant to UIM benefits claims.  280 P.3d at 657-58.  Although Plaintiff apparently seeks all of State Farm's post-suit claims handling notes, rather than just its liability assessments or fault evaluations, the court nevertheless finds the analysis in *Sunahara* applicable

here.  Absent any argument from Plaintiff explaining why these documents are relevant to the breach of contract claim, the court concludes that Plaintiff has not met her burden of establishing the relevance of her request.  *Cunningham*, 2008 WL 2668301, at *1.

## II.   Work Product Doctrine

Because the court has concluded that Plaintiff has failed to meet her burden to demonstrate that the claims handling notes requested by Plaintiff are relevant to either of her claims, the court need not, and does not, reach the Parties' argument with respect to the applicability of the work-product doctrine.  Accordingly, the court declines to exercise its discretion to order *in camera* review of the requested documents, as such a review is not necessary at this juncture.  *Cantu Servs.*, 2021 WL 2323721, at *5.  For the reasons set forth herein, the Motion to Compel is respectfully **DENIED**.

**CONCLUSION**

For the reasons stated herein, **IT IS ORDERED** that:

(1)     Plaintiff's Motion to Compel [Doc. 32] is **DENIED**.

DATED:  May 18, 2022                            BY THE COURT:

                                                _____
                                                Nina Y. Wang
                                                United States Magistrate Judge