**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-02364-NYW-NRN

TERESA BYRON-AMEN,

     Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

     Defendant.

---

## ORDER DENYING PLAINTIFF'S MOTION TO AMEND

---

This matter is before the court on Plaintiff's Motion to Amend Complaint to Add Common Law Bad-Faith Claim ("Motion to Amend" or "Motion"). [Doc. 43, filed May 26, 2022]. Upon review of the Motion, the related briefing, and the applicable case law, the Motion to Amend is respectfully **DENIED**.

## BACKGROUND

### I.    Factual Background

This case arises out of an automobile collision occurring on or about November 23, 2019. [Doc. 5 at ¶¶ 4, 6]. On that date, Plaintiff Teresa Byron-Amen ("Plaintiff" or "Ms. Byron-Amen") was traveling on a Denver, Colorado highway when her vehicle was struck by an underinsured motorist. [*Id.*]. Plaintiff alleges that the collision was caused by the underinsured motorist's negligent driving. [*Id.* at ¶ 13]. Ms. Byron-Amen suffered damages as a result of the collision. [*Id.* at ¶¶ 9, 43].

At the time of the collision, Ms. Byron-Amen held two insurance policies (collectively, the "Policy") issued by Defendant State Farm Mutual Automobile Insurance Company ("Defendant"

or "State Farm"), which provided underinsured motorist ("UIM") coverage to Plaintiff. [*Id.* at ¶ 14]. On February 2, 2021, State Farm authorized Ms. Byron-Amen to enter into a settlement with the underinsured motorist's insurance carrier. [*Id.* at ¶ 16].

Because her medical expenses exceeded the amount of the settlement, *see* [*id.* at ¶¶ 17, 43–44], Ms. Byron-Amen submitted a claim to State Farm seeking UIM benefits for the injuries she sustained in the accident. [*Id.* at ¶¶ 19–20]. In so doing, Plaintiff submitted numerous documents and medical bills to State Farm and provided State Farm an authorization to obtain her medical records related to her prior medical treatment. [*Id.* at ¶¶ 22–23, 25, 28]. On June 15, 2021, State Farm sent correspondence to Ms. Byron-Amen indicating that it was "gathering prior records for [Plaintiff] and [would] be scheduling an [independent medical examination ('IME')]" of Plaintiff. [*Id.* at ¶ 27]. State Farm informed Plaintiff that further evaluation of her claim "pends the results of the IME." [*Id.*]. In other words, State Farm informed Plaintiff that it was unable to evaluate her UIM claim absent an IME of Plaintiff. *See* [*id.* at ¶ 32]. Plaintiff alleges that "State Farm has all the information necessary to evaluate" Plaintiff's claim and there is no right under the Policy for State Farm to demand that Plaintiff participate in an IME. [*Id.* at ¶¶ 29, 33].

## II.    Procedural Background

Ms. Byron-Amen initiated this civil action against State Farm on August 6, 2021 in the District Court for Denver County, Colorado, [*id.* at 1], and State Farm removed this action to federal court on September 1, 2021. [Doc. 1]. In her Complaint, Ms. Byron-Amen raises one claim of breach of contract and one claim of unreasonable delay or denial of insurance benefits pursuant to Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116. [Doc. 5 at 6, 7]. Plaintiff's second claim also appears to invoke the doctrine of unjust enrichment. *See* [*id.* at 7]. This court entered its Scheduling Order on October 28, 2021, *see* [Doc. 17], and State Farm filed an Amended Answer

on November 4, 2021.  [Doc. 19].[1]  Under the Scheduling Order, the deadline to amend the pleadings was on January 12, 2022.  [Doc. 17 at 8].

On November 12, 2021, Plaintiff filed a Motion for Protective Order Regarding Conditions & Framework of Proposed Physical Examination of Plaintiff (the "Motion for Protective Order"). [Doc. 21].  In that filing, Plaintiff sought a protective order limiting State Farm to one medical examination in this case pursuant to Rule 35 of the Federal Rules of Civil Procedure and requiring that State Farm's IME of Plaintiff be videotaped at Plaintiff's expense.  [*Id.* at 3, 5].  This court denied Plaintiff's Motion for Protective Order on January 25, 2022, finding that "whether the agreed-upon medical examination of Ms. Byron-Amen is considered a medical examination under the Policy or an IME under Rule 35 is of no consequence" to this action.  [Doc. 28 at 7-8].  In addition, the court concluded that Ms. Byron-Amen had not met her burden of demonstrating that videotaping her IME was necessary in this instance.  [*Id.* at 14].[2]

Thereafter, the Parties contacted the court and requested a Discovery Dispute Conference, which was held on March 8, 2022.  *See* [Doc. 30].  At that Conference, the Parties discussed a discovery dispute regarding State Farm's assertion of work-product privilege over its claims handling notes created after Plaintiff initiated this lawsuit. [*Id.*].  After hearing argument from the Parties, this court ordered Defendant to supplement its privilege log no later than March 14, 2022, and instructed the Parties that if, after Defendant's supplementation, the Parties' dispute remained

---

[1] State Farm filed its original Answer on September 29, 2021.  [Doc. 13].  At the Scheduling Conference, the Parties informed the court that they had a dispute concerning the sufficiency of some of Defendant's responses in that Answer.  [Doc. 18 at 2].  Upon review of the original Answer, this court concluded that Defendant's response to Paragraph 26 of the Complaint did not adequately respond to the Paragraph's substance and ordered Defendant to file an Amended Answer which amended its response to Paragraph 26.  [*Id.* at 3].

[2] Ms. Byron-Amen's medical examination ultimately took place on May 13, 2022.  [Doc. 43 at 5].

unresolved, the Parties would be required to formally brief the issue by filing an appropriate motion under the Federal Rules. [*Id.* at 1].

On March 24, 2022, Ms. Byron-Amen filed a Motion to Compel, [Doc. 32], requesting that the court conduct an *in camera* review of State Farm's post-litigation claim notes to "determine the applicability of any privilege." [*Id.* at 5]. On May 18, 2022, this court denied Plaintiff's Motion to Compel. *See* [Doc. 41]. In the Order denying the Motion to Compel, the court emphasized that Plaintiff's Complaint does not raise a common law bad faith claim, and explained that "while post-litigation conduct may be relevant to a claim of common law bad faith, particularly to establish the insurer's subjective state of mind, the court is not persuaded that the same is true for Plaintiff's *statutory claim*, which will be resolved based on evidence of industry standards." [*Id.* at 15–16 (emphasis added)]. The court likewise explained that Plaintiff failed to "direct[] the court to authority demonstrating the relevance of State Farm's post-litigation claims notes to her [statutory unreasonable delay or denial] claim under [Colo. Rev. Stat.] § 10-3-1115, nor ha[d] she expressly articulated a specific theory triggered after the inception of the suit as to why post-litigation conduct would be relevant to her claim." [Doc. 41 at 20].

On May 26, 2022—eight days after the court denied Plaintiff's Motion to Compel— Plaintiff filed the instant Motion to Amend, seeking to amend the Complaint to add a common law bad faith claim. *See* [Doc. 43, filed May 26, 2022]. Defendant responded on June 16, 2022, *see* [Doc. 47], and Plaintiff filed her Reply the next day, *see* [Doc. 51]. The Motion to Amend is thus ripe for disposition.

## LEGAL STANDARDS

The purpose of the deadline to amend pleadings, as set out in a Scheduling Order, is to force the parties to prioritize their discovery to obtain the information necessary to know if

amendment is required sooner rather than later. This also ensures that discovery proceeds in an orderly fashion. *See Valles v. Gen-X Echo B, Inc.*, No. 13-cv-00201-RM-KLM, 2013 WL 5832782, *3 (D. Colo. Sept. 27, 2013). Accordingly, when, as here, a party seeks to amend pleadings after the deadline set in the Scheduling Order, the court's consideration is subject to a two-prong analysis. First, the party must establish good cause under Rule 16(b)(4) of the Federal Rules of Civil Procedure. *See Gorsuch, Ltd., B.D. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). Second, only if the party establishes good cause does the court turn to whether amendment is proper under Rule 15(a) of the Federal Rules of Civil Procedure. *Id*. at 1242; *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).

Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch,* 771 F.3d at 1240 (citing *Pumpco*, 204 F.R.D. at 668). This burden is satisfied, for example, when a party learns of new information in a deposition or that the governing law has changed. *Id.* "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Colo. Visionary Acad. v. Medtronic, Inc.,* 194 F.R.D. 684, 687 (D. Colo. 2000). The party seeking an extension is normally expected to show at least good faith on its part and some reasonable basis for not meeting the deadline. *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995).

By contrast, Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Courts have described the standard under Rule 15(a) as "more lenient" than that under Rule 16(b). *Pumpco*, 204 F.R.D. at 668. Refusing leave to amend is

generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.  *Id.*; *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir. 1993).  Whether to allow amendment is within the trial court's discretion.  *Burks v. Okla. Publ'g Co.,* 81 F.3d 975, 978–79 (10th Cir. 1996).  The party contesting the motion to amend has the burden of proving that the amendment should be refused on one of these bases.  *Acker v. Burlington N. & Santa Fe R. Co.*, 215 F.R.D. 645, 654 (D. Kan. 2003).  A court may deny a motion for leave to amend if a plaintiff "fail[s] to satisfy either factor—(1) good cause or (2) Rule 15(a) . . ."  *Gorsuch,* 771 F.3d at 1241.

## ANALYSIS

### I.    The Motion to Amend

In the instant Motion, Ms. Byron-Amen seeks to amend the operative Complaint, [Doc. 5], to add a common law bad faith claim against State Farm, based on the post-litigation events surrounding Ms. Byron-Amen's medical examination and State Farm's selection of the doctors to conduct the examination.  *See* [Doc. 43].  Specifically, in her proposed First Amended Complaint, *see* [Doc. 43-2; Doc. 43-3],[3] Plaintiff seeks to include, *inter alia*, the following substantive allegations:

> Defendant State Farm Mutual Automobile Insurance Company breached its duties to its insured, and acted in bad faith, through its conduct as described above and by engaging in the following, among other acts:
>
> A.    Originally State Farm scheduled an examination with Stephen Lindenbaum to take place on September 14, 2021 through a third-party agent, Dane Street;

---

[3] Plaintiff attaches both a redlined copy and clean copy of the proposed First Amended Complaint. *See* [Doc. 43-2; Doc. 43-3].  Because the redlined version clearly identifies the amendments that Plaintiff is seeking in the instant Motion, the court will refer to that version herein for ease of reference.

B.   After the filing of the lawsuit, Defendant State Farm selected a different examiner, Dr. Anant Kumar, M.D. to perform the exam of Teresa Byron-Amen;

C.   That exam with Dr. Kumar was scheduled to take place on March 17, 2022;

D.   On March 14, 2022, three days before the exam, State Farm unilaterally canceled the exam with Dr. Kumar, indicating that Dr. Kumar "did not feel comfortable proceeding with the IME because he personally knows Dr. Timothy Kuklo [Plaintiff's treating spine surgeon] and felt he could not be objective."

E.   State Farm then selected Dr. Jeffrey Sabin, M.D. to perform the exam with a requirement by Dr. Sabin, that Ms. Byron-Amen attend the exam with a female chaperone for "liability reasons."

F.   Ms. Byron-Amen selected a female chaperone with the qualifications of a registered nurse and selected one of the six proposed dates given for the exam.

G.   Defendant and/or Dr. Sabin objected to the female chaperone having a nursing background and then indicated that none of the six dates given for the exam were available.

H.   Defendant, through defense counsel, then scheduled a Discovery Hearing to take place on April 7, 2022, specifically related to Ms. Byron-Amen having a nurse as the selected female chaperone required by Dr. Sabin to attend the examination with Plaintiff.

I.   Plaintiff's counsel provided information to defense counsel on April 1, 2022 that State Farm's selected examiner, Dr. Sabin had been investigated administratively, criminally, and civilly for alleged sexually assaulting an examinee in at least one medical exam and that there were at least "two criminal cases" regarding sexual assault by Dr. Sabin in the context of an examination.

J.   Defendant proceed [sic] to cancel the exam with Dr. Sabin; canceled the April 7, 2022 Discovery Hearing with the Court and then selected a forth [sic] examiner to examine Teresa Byron-Amen, Dr. Castro.

K.   The exam of Byron-Amen finally took place on May 13, 2022.

[Doc. 43-2 at ¶ 64].

Plaintiff bases her common law bad faith claim on the grounds that State Farm (1) "owes [Ms.] Byron-Amen a duty to act in good faith in investigating, reviewing, adjusting, and settling her claims"; (2) "through its actions/inactions in the selection of the examiners, has intentionally delayed the exam process for Ms. Byron-Amen and caused her emotional trauma"; (3) "has a continuing duty to not investigate, evaluate, delay/deny a claim based on biased, one-sided information"; and (4) "had a duty to select an examiner to perform the exam in a fair, objective

manner as evidenced by State Farm's own internal manuals and procedures." [*Id.* at ¶¶ 63, 65–67]; *see also* [*id.* at ¶¶ 68–71 ("State Farm failed to follow its own internal policies, practices and procedures in the implementation of the examination process"; Defendant's "actions are unreasonable and demonstrate a pattern and course of conduct of violating industry standards and practices in the selection of the examiner"; and Defendant "knew its conduct was unreasonable and disregarded the fact that its conduct was unreasonable")].

Based on the events as alleged in the proposed First Amended Complaint, Ms. Byron-Amen argues in the Motion that State Farm failed to "select an examiner to perform the exam in a fair, objective manner" and, instead, "selected the[ ] 4 examiners without an adequate investigation of Dr. Kumar [sic], who admitted three days before the exam that he could not be 'objective.'" [Doc. 43 at 7]. Plaintiff contends that, by selecting Dr. Kumar, "State Farm attempted to engage in conduct that, in the worst light, was fraudulent and calculated to consider State Farm's interests above the interest of . . . Ms. Byron-Amen" and "in the best light, State Farm acted without justification and in disregard of the plaintiff's rights causing further delay to" completing the exam and determining Plaintiff's entitlement to benefits. [*Id.* at 7–8]. In addition, Plaintiff contends that "State Farm also selected Dr. Sabin without an adequate investigation, who, when confronted by the concerns of serious prior sexual assaults on IME patients, withdrew from agreeing to performing the exam causing additional delays." [*Id.* at 8]. Therefore, Ms. Byron-Amen continues, amendment of the Complaint to add a common law bad faith claim is warranted on the basis that she could not "allege or articular any 'pattern or course of conduct' for bad faith in the context of the [medical] exam at the initiation of the litigation on August 6, 202[1]" and State Farm's "actions/inactions were substantially done after the deadline of January 12, 2022 to amend." [*Id.*].

## II.      Good Cause Under Rule 16(b)

The court must first determine if amendment of the Scheduling Order is appropriate under Rule 16(b).  As mentioned, the deadline to amend pleadings was on January 12, 2022.  *See* [Doc. 17 at 8].

***The Parties' Arguments.***  In the Motion, Plaintiff argues that good cause exists for the late amendment because "the allegations to support the [common law bad faith] claim did not occur until after January 12, 2022."  [*Id.* at 8].  Specifically, Plaintiff contends that she acted diligently in filing the Motion to Amend on May 26, 2022 on the basis that it was only *after* Dr. Castro completed her medical examination on May 13, 2022 "that Plaintiff [was] able to establish a pattern and practice of bad-faith conduct on the part of State Farm by an objective standard that, in requesting and performing the exam, State Farm violated industry standards in the selection of the examiners."  [*Id.* at 8–9].  Plaintiff also argues that the discovery deadline has not yet passed, and therefore Defendant "will have more than sufficient time to adequately defend against" the new claim.  [*Id.* at 9].[4]

State Farm disagrees that Plaintiff has established good cause under Rule 16(b)(4), arguing that Plaintiff fails to properly address her diligence in seeking to amend the Complaint or provide an adequate explanation for the delayed amendment.  *See* [Doc. 47 at 8–11].  State Farm contends that (1) Plaintiff has been represented by her present counsel since July 2020; (2) "[a] sentence" in the operative Complaint appears "to track some of the language for an element of a common law bad faith claim," but Plaintiff failed to include such a claim in the Complaint; and (3) "[i]t seems it was not until the Court's Order on Plaintiff's Motion to Compel, [ECF No. 41], that

---

[4] When Plaintiff filed the Motion, the discovery deadline was August 24, 2022.  *See* [Doc. 35]. The current discovery deadline is November 10, 2022.  *See* [Doc. 46].

Plaintiff's counsel realized" either (a) that he failed to plead a common law bad faith claim or (b) the "omission of a common law bad faith claim from the Complaint arguably narrowed the scope of discovery in this case."  [*Id.* at 9].  Further, State Farm argues that Plaintiff's assertion that she could not move to amend until after her medical examination with Dr. Castro lacks basis. Specifically, Defendant asserts that Ms. Byron-Amen could have amended her Complaint in March 2024 on the grounds that "[a]ccording to Plaintiff, Dr. Kumar's withdrawal from her IME is a sufficient factual basis, on its own, to state a common law bad faith claim."  [*Id.* at 10].

On Reply, Ms. Byron-Amen restates that she could not seek to amend the Complaint "until the exam finally occurred on May 13, 2022 with Dr. Castro," because only then could Plaintiff demonstrate "a pattern and practice of [State Farm's] repeatedly delaying and canceling of the exams unilaterally" such that Plaintiff could plead a claim for common law bad faith.  [*Id.* at 4]. In addition, Plaintiff references the deposition testimony of State Farm adjuster, Alyssa Cottrell, to support her allegations that State Farm engaged in bad faith conduct.  [*Id.* at 4–5].  Specifically, based on Ms. Cottrell's testimony, Plaintiff insists that she has demonstrated good cause for the delayed amendment because Ms. Cottrell's deposition "recently took place on June 3, 2022," and the burden to establish good cause "is satisfied when a party learns of new information in a deposition."  [*Id.* at 5].  Plaintiff asserts that the "new information" from Ms. Cottrell's deposition includes that "Ms. Cottrell did no research whatsoever on any of the examiners; did not check the qualifications of any of the examiners; did not check to see of any potential conflicts of any of the examiners; and did no research on the third-party vendors State Farm selected."  [*Id.* at 4].  Plaintiff further claims that Ms. Cottrell testified that

> there were repeated and multiple instances of State Farm not complying with State Farm's own mandatory internal policies, practices and procedures, including, *inter alia*: a failure on the part of State Farm to comply with Colorado Division of Insurance Regulation CCR 702-5:5-1-14; multiple failures to document significant

changes/activities in the claims file; failing to get a required recorded statement of Ms. Byron-Amen; failure to review practice standards used by the vendors; and failure to perform basic investigation as required.

[*Id.* at 4–5]. Plaintiff also points out that State Farm's Response does not address any of the "new information that was learned by [Ms. Cottrell's] recent deposition." [*Id.* at 5].

*Application.* At the outset, the court notes that Plaintiff raises her "new information" argument (with respect to Ms. Cottrell's deposition) for the first time in her Reply brief. *See* [*id.*]. "When a party puts forth new arguments in a reply brief, a court may avoid error by either: (1) choosing not to rely on the new arguments in determining the outcome of the motion; or (2) permitting the nonmoving party to file a surreply." *E.E.O.C. v. Outback Steak House of Fla., Inc.,* 520 F. Supp. 2d 1250, 1260 (D. Colo. 2007) (citing *Pippin v. Burlington Res. Oil & Gas Co.,* 440 F.3d 1186, 1192 (10th Cir. 2006)).

In light of the foregoing standard, the court declines to rely on Plaintiff's arguments with respect to the deposition of State Farm adjuster Alyssa Cottrell in deciding the instant Motion. *See* [Doc. 51 at 4–5, 8].[5] Significantly, Plaintiff acknowledges that Ms. Cottrell's deposition did not take place until June 3, 2022—one week *after* Plaintiff filed the instant Motion to Amend. *See* [Doc. 43, filed May 26, 2022]. Thus, it appears contradictory to suggest that the timing of the initial Motion to Amend could be properly attributed to any testimony provided by Ms. Cottrell. Moreover, Plaintiff's argument that State Farm fails to address in its Response the "new information that was learned by a recent deposition," [Doc. 51 at 5], ignores that Defendant was responding to the arguments Plaintiff made in her opening brief that was filed *before* the deposition. *See* [Doc. 43].Plaintiff also fails to cite any record supporting her summary characterization of Ms. Cottrell's deposition testimony. Finally, Plaintiff's characterizations of

_____

[5] State Farm did not seek to file a surreply here.

Ms. Cottrell's purported deposition testimony—specifically regarding Defendant's purported failures to "comply with Colorado Division of Insurance Regulation CCR 702-5:5-1-14," "document significant changes/activities in the claims file," "get a required recorded statement of Ms. Byron-Amen," "review practice standards used by the vendors," and "perform basic investigation as required," [Doc. 51 at 4–5]—go well beyond the asserted basis for which Plaintiff seeks to amend the Complaint: namely, to add a common law bad faith claim based on the events surrounding State Farm's selection of medical examiners and scheduling of Ms. Byron-Amen's medical examination. *See generally* [Doc. 43]; *see also* [Doc. 51 at 5–6].

Based on the record before it, the court finds that Plaintiff has not established sufficient good cause for the late amendment under Rule 16(b)(4). In determining whether good cause exists for delay under Rule 16(b), the "question is when the [moving party] first learned of new information that it sought to include in its pleadings." *Fountain Valley Inv. Partners, LLC v. Cont'l W. Ins. Co.*, No. 14-cv-01906-MSK-NYW, 2015 WL 7770772, at *2 (D. Colo. Dec. 3, 2015). Here, the court concludes that Ms. Byron-Amen knew about the issues with scheduling and conducting her medical examination that she now seeks to include in the Complaint by March 24, 2022—the day she filed the Motion to Compel. *See* [Doc. 32]. In addition, to the extent that Ms. Byron-Amen now seeks to add a common law bad faith claim based on Defendant's purported failures to "comply with Colorado Division of Insurance Regulation CCR 702-5:5-1-14," "document significant changes/activities in the claims file," "get a required recorded statement of Ms. Byron-Amen," "review practice standards used by the vendors," and "perform basic investigation as required," there is no evidence in the record to suggest that she was somehow precluded from seeking such information and amendment prior to January 12, 2022—particularly

when the original Complaint contains general references to her dissatisfaction with State Farm's claims process. *See*, *e.g.*, [Doc. 5 at ¶¶ 54–61].

Despite Plaintiff's characterizations in the Motion that her common law bad faith claim is based on Defendant's selection of "the[] 4 examiners without an adequate investigation," [Doc. 43 at 7], it is apparent that Plaintiff primarily challenges only State Farm's selections of Dr. Kumar and Dr. Sabin to conduct Plaintiff's medical examination. *See generally* [Doc. 43].[6]  As State Farm points out, "[a]t the time Plaintiff filed her Motion to Compel" on March 24, 2022, "Dr. Kumar's withdrawal from Plaintiff's IME had already occurred and Plaintiff's counsel was aware State Farm identified Dr. Sabin to perform Plaintiff's IME, which had already been reset for April 21, 2022." [Doc. 47 at 10].  Plaintiff's Reply fails to dispute this course of events. *See* [Doc. 51]. Further, on March 23, 2022—the day *before* Plaintiff filed her Motion to Compel—the Parties requested, and this court scheduled, a discovery hearing for April 7, 2022. *See* [Doc. 31].  Notably, Plaintiff argues in the instant Motion that "[t]he issue of the Discovery Hearing was specifically related to Ms. Byron-Amen having a registered nurse as the selected female chaperone required by Dr. Sabin to attend the examination with her" as Plaintiff had "serious and legitimate safety concerns specifically about Dr. Sabin's exam of a female in the context of the medical examination." [Doc. 43 at 4].

---

[6] For instance, Ms. Byron-Amen argues in the Motion that "State Farm had a duty to select an examiner to perform the exam in a fair, objective manner" but failed to do so and, instead, "selected the[ ] 4 examiners without an adequate investigation of Dr. Kumar, who admitted three days before the exam that he could not be 'objective.'"  [Doc. 43 at 7].  This argument, however, lacks any basis.  Indeed, according to Plaintiff, Dr. Kumar was the second examiner selected by State Farm. *See* [Doc. 43 at 3].  Thus, it is unclear how Defendant's selection of the first examiner, Dr. Lindenbaum, would have been affected by a *later investigation* of Dr. Kumar; and it likewise makes no sense how an investigation of Dr. Kumar would have affected the *later selections* of Dr. Sabin or Dr. Castro, the latter of whom ultimately conducted Plaintiff's exam on May 13, 2022. *See* [*id.* at 3–4].

In other words, based on Ms. Byron-Amen's representations, she knew by March 24, 2022 the information she needed to seek an amendment of the Complaint to add a common law bad faith claim: namely, that Dr. Kumar withdrew from conducting Plaintiff's exam because he felt he could not be "objective"; and Plaintiff had "serious and legitimate safety concerns about Dr. Sabin's exam of a female in the context of a medical examination." [*Id.* at 4–5, 7–8].

Plaintiff's Motion and Reply fail to address the most salient question here—that is, whether Mr. Byron-Amen acted with diligence with respect to (a) when she first learned of the relevant information to assert a common law bad faith claim based upon State Farm's selection of Drs. Kumar and Sabin to conduct Plaintiff's medical examination, and (b) when she moved to amend. *Cf. Fountain Valley*, 2015 WL 7770772, at *2 (where the plaintiff learned of information but "did not realize [its] significance" until discovery had progressed further, finding no good cause because the relevant question was "when the Plaintiff first learned of new information that it sought to include in its pleadings"); *Ward v. Acuity*, No. 21-cv-00765-CMA-NYW, 2021 WL 4947294, at *4 (D. Colo. Oct. 6, 2021), *report and recommendation adopted*, 2021 WL 5113580 (D. Colo. Nov. 3, 2021) (finding no good cause for delay in amendment where the plaintiff did not initially realize the relevance of certain information it had in its possession). Although Plaintiff claims that she could not "demonstrate a pattern and practice of State Farm's bad faith action" until Dr. Castro completed her exam on May 13, 2022, [Doc. 51 at 4], she fails to explain why the information forming the basis of her proposed common law bad faith claim was unavailable to her by March 24, 2022; and she likewise fails to identify any additional events that occurred in the two months between March 24, 2022—the day she filed the Motion to Compel—and when she filed the Motion to Amend on May 26, 2022. *See* [Doc. 43].[7]

---

[7] The court also notes that despite Plaintiff's assertions that the events forming the basis of her

Finally, Plaintiff attaches to her Reply a copy of the court's opinion in *Grafe v. CSAA Gen. Ins. Co.*, 1:21-cv-00100-KLM, 2022 WL 702624, at *1 (D. Colo. Mar. 9, 2022), *see* [Doc. 51-1], asserting that the facts in that case are "similar to the fact pattern herein which provides additional analysis as to why the Court should grant Plaintiff's Motion."  [Doc. 51 at 8].  The court respectfully is not persuaded.  In *Grafe*, the plaintiff argued that he waited to request amendment of the complaint because, "although he believed there may be facts to support a Bad Faith claim, he intended to pursue this belief further in deposition before moving to add the claim to ensure his basis was plausible rather than conceivable."  *Grafe*, 2022 WL 702624, at *2 (cleaned up). Essentially, the plaintiff "was trying to streamline the proceedings because otherwise the bad faith 'claim would likely have faced a motion to dismiss as failing to [meet] the plausibility standard.'"  *Id.*  Thus, believing that the claims adjuster "had the necessary information to support his claim," the plaintiff initially requested to conduct the adjuster's depositions "more than a month before the . . . deadline for amendment of pleadings."  *Id.* at *3.  However, the deposition was continuously delayed for various reasons and eventually set after the amendment deadline.  The

---

proposed common law bad faith claim did not arise until after the January 12, 2022 deadline to amend the pleadings, the Parties jointly moved to modify the Scheduling Order on March 24, 2022—the same day Plaintiff filed the Motion to Compel.  *See* [Doc. 33].  Specifically, the Parties requested to extend the expert, discovery, and dispositive motion deadlines "due to a pending discovery dispute concerning the discoverability of Defendant's post-suit claim notes," and Plaintiff expressly sought "additional disclosures to allow for the resolution of said dispute before serving her expert disclosures."  [*Id.* at ¶¶ 2, 8].  The Parties also mentioned Dr. Kumar's withdrawal and Plaintiff's then-forthcoming appointment with Dr. Sabin.  *See* [*id.* at ¶¶ 10–12].  Plaintiff failed, however, to indicate at the time that she intended seek to amend the Complaint, which is notable given that (1) the subject of the Motion to Compel was the post-suit claim notes, *see* [Doc. 32]; and (2) in denying the Motion to Compel one week before Plaintiff filed the instant Motion seeking to add a common law bad faith claim, this court explained that Defendant's post-suit claims handling notes were not relevant because "Ms. Byron-Amen does not raise a common law bad faith claim. She raises only a statutory claim of unreasonable delay or denial and a general breach of contract claim."  [Doc. 41 at 10–13].

court found that the record did not support a finding that the plaintiff was not diligent in seeking to extend the amendment deadline on the basis of the plaintiff's "adequate explanation for his delay, i.e., the desire to streamline this litigation and to obtain the deposition of [the adjuster] before seeking to amend his complaint." *Id.* Here, Ms. Byron-Amen does not argue that she was seeking to streamline the proceedings by obtaining the deposition of Ms. Cottrell before seeking to amend the Complaint. Indeed, Plaintiff filed the instant Motion to Amend *before* Ms. Cottrell's deposition. In any event, as explained above, this court declines to rely upon Plaintiff's arguments with respect to Ms. Cottrell's deposition given that she raises them for the first time in her Reply brief. *See* [Doc. 51].

In sum, Ms. Byron-Amen has not provided an adequate explanation for the delay to include factual allegations known since March 24, 2022, or sufficient diligence on her part to determine all the potential claims for relief, to establish good cause for modifying the Scheduling Order to allow the proposed amendment. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006); *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987) (finding that the Rule 16(b) standard was not met, where the defendant, as of the filing of the lawsuit, possessed "documents from which it could have discovered and asserted the defense"); *Medtronic*, 194 F.R.D. at 687 ("Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." (citation omitted)). And because Ms. Byron-Amen has failed to establish good cause for delay under Rule 16(b), "there is no need for the [c]ourt to move on to the second step of the analysis, i.e., whether [the movant] [has] satisfied the requirements of Rule 15(a)." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 990 (10th Cir. 2019) (changes in original) (citations omitted); *Gorsuch*, 771 F.3d at 1242 ("Having concluded [the movants] lacked good cause to amend their pleadings after the scheduling order deadline, we need not reach the Rule 15(a) issue,

and decline to do so."); *cf. Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998) ("[W]e do not favor permitting a party to attempt to salvage a lost case by untimely suggestion of new theories of recovery, especially after the trial judge has already expressed adverse rulings.").[8]

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)     Plaintiff's Motion to Amend Complaint to Add Common Law Bad-Faith Claim [Doc. 43] is **DENIED**.

DATED: August 24, 2022                              BY THE COURT:

Nina Y. Wang
United States District Judge

---

[8] Even if this court were to reach the analysis under Rule 15(a), it would be disinclined to grant the Motion to Amend.  A common law insurance bad faith claim requires the plaintiff to establish "both that the insurer acted unreasonably under the circumstances and that the insurer knowingly or recklessly disregarded the validity of the insured's claims."  *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 990 (2015), *aff'd*, 418 P.3d 501 (2018).  As proposed, there are insufficient factual allegations that allow a factfinder to conclude that the approximate two-month delay in scheduling Ms. Byron-Amen's medical examination between Dr. Kumar and Dr. Castro resulted in State Farm knowingly or recklessly disregarding the validity of the insured's claims.  *See* [Doc. 43-2 at 8–9].